This case involves an action by a tenant against a landlord alleging that the landlord fraudulently induced the tenant to pay approximately $35,000 to obtain a release and termination of the lease.[1] The jury below rendered a verdict in favor of the tenant and awarded damages of $137,500. We affirm conditionally.
Merritt Robbins entered into an agreement with Bruno's on January 1, 1977, to sublease space for a supermarket in Madison Mall Shopping Center. The Mall is the landlord of the space sublet to Robbins. The supermarket space was first leased to National Food Stores, which assigned the lease to Bruno's. Under the terms of the sublease agreement, Robbins became obligated to perform all of the obligations of Bruno's under the original lease.
On June 25, 1977, Robbins closed the grocery store because it was unprofitable. Robbins requested that The Mall assist him in subleasing the space or permit him to terminate the lease. The Mall agreed to release Robbins from the lease if a new lessee was found. On February 14, 1978, Robbins requested permission to sublet the space to Stonehenge, a discotheque. Unaware of Robbins's negotiations with Stonehenge, agents of The Mall began negotiating with another tenant in Madison Mall, Lang Sporting Goods. When Robbins informed the agents of The Mall of his intent to sublet the space to a discotheque, the owners rejected Stonehenge as unsuitable. The Mall stated that Stonehenge would not be an acceptable tenant "under any circumstances," and that the owners were opposed to the concept of a discotheque which would leave 120 feet of inactive frontage during the day. The negotiations between The Mall and Lang proved unsuccessful.
Robbins brought suit in April, 1978, against The Mall to cancel the lease. Robbins agreed to pay $35,710.57 to The Mall as *Page 1199 
a settlement and termination of the lease, $15,710.57 representing expenses already accrued. The Mall delivered a written release and termination of the lease.
A couple of days after the termination, an agent of The Mall contacted Stonehenge. One of the principals of Stonehenge explained that it would be willing to lease only one-half of the supermarket space, none of it fronting on the interior mall.
Stonehenge's representatives allayed other fears of The Mall's owners in renting mall space to a discotheque. On August 21, 1978, Stonehenge entered into a lease with The Mall.
On January 22, 1979, Robbins amended his complaint and asserted a claim for fraud in the termination of the lease. Robbins sought compensatory damages for the amount he paid to The Mall to terminate the lease and for lost profits, and punitive damages for misrepresentation or fraud. Robbins made a demand for jury trial. The Mall moved the court to strike the trial by jury on the basis of a clause in the original lease waiving the right to jury trial. The court denied the motion to strike and the action was tried before a jury. The jury rendered a verdict in favor of Robbins. The Mall appeals.
On appeal, The Mall asserts several points as error. First, The Mall contends that the trial court erred in submitting the action to trial by jury. Second, The Mall argues that the alleged fraudulent misrepresentations are not actionable as misrepresentations of an existing fact. Third, The Mall asserts that the trial court erred in submitting the issue of suppression of a material fact to the jury and improperly charged the jury on that issue. Fourth, The Mall contends that Robbins did not rely on the alleged misrepresentations and thus should be barred from recovery. Finally, The Mall asserts that the evidence does not support the award of damages to Robbins.
 I. Right to Jury Trial
Art. 1, § 11, Constitution 1901, and Rule 38, ARCP, express a preference for trial by jury. Nevertheless, no constitutional or statutory provision prohibits a person from waiving his or her right to trial by jury. Rule 38, ARCP; Hood v. Kelly,285 Ala. 337, 231 So.2d 901 (1970). This Court recently enunciated three factors in determining whether to enforce a contractual waiver of the right to trial by jury: (1) whether the waiver is buried deep in a long contract; (2) whether the bargaining power of the parties is equal; and (3) whether the waiver was intelligently and knowingly made. Gaylord Department Stores ofAlabama v. Stephens, 404 So.2d 586 (Ala. 1981). The contractual waiver in the lease is in section 10.4, which is entitled "Waiver of Trial by Jury: Tenant Not To Counterclaim." Since the section is titled so as to call attention to the waiver of jury trial in the lease, the waiver is not inconspicuously buried deep in the contract. Furthermore, the parties were both businessmen. Robbins owned six or seven other grocery stores at the time he entered into the lease. It cannot be said that the parties had unequal bargaining power.
Nevertheless, we agree with Robbins that the waiver agreement is inapplicable to this case because this controversy arose outside and beyond the operative effect of the lease agreement. Indeed, the termination agreement and release discharged "all obligations with respect [to the lease]." Robbins does not seek to reinstate the lease; nor does he claim damages pursuant to any of the terms of the lease. Rather, by way of amendment to the original suit for cancellation of the lease, he sues for fraud allegedly perpetrated by the lessor in the procurement of the termination agreement and release.
While the public policy favoring jury trials subjects jury waiver agreements to strict construction, the application of that policy will not void every such agreement. If the bargaining positions of the parties are equal, ordinarily jury waiver agreements will be upheld. Gaylord Department Stores ofAlabama v. Stephens, 404 So.2d 586 (Ala. 1981), FranklinDiscount Co. v. Ford, 27 N.J. 473, 143 A.2d 161,73 A.L.R.2d 1316 (1958). *Page 1200 
Yet, that same public policy that applies the rule of strict construction will likewise limit the scope of operation of a jury waiver agreement to those controversies directly related to and arising out of the terms and provisions of the overall agreement containing the jury waiver provisions. SeeInternational Roofing Corp. v. Van Der Veer, 43 Misc.2d 93,250 N.Y.S.2d 387 (1964).
For example, if the controversy arose between the lessor and lessee over the payment of rent, a jury waiver agreement would be enforceable by either party regarding the right to a trial by jury in a suit for the collection of rent. But if this same controversy resulted in a personal confrontation in which an assault and battery occurred, a suit for personal injury would not come within the jury waiver provision.
Appellants acknowledge the general rule, but insist that the broad language of the waiver provision — "any way connected with this lease, the relationship of Landlord and Tenant, Tenant's use or occupancy of the Leased Premises, and/or any claim of injury or damage, and any emergency statutory or any other statutory remedy" — clearly expresses the agreement of the parties to waive the right of trial by jury in the instant case.
We disagree, and hold that the agreement, out of which the relationship of these parties as lessor and sublessee arose, has no application to the relief sought in this case, which is based upon a claim independent of and outside of the lease.
Furthermore, while we reject Robbins's argument that the relationship of the parties, that of lessor-sublessee, is too remote to carry the waiver provision, we embrace Moore's summary of the remoteness of time rule stated in note 24, 5Moore's Federal Practice, § 38-401:
 "Since a party clearly may waive the right of jury trial shortly after the institution of a federal action, under Rule 38, there should be a strong presumption in favor of an otherwise valid contract to waive a jury and try the action to the court where it was entered into after the cause of action arose and shortly before and in contemplation of litigation, and the now objecting party was represented by counsel. The presumption would be less strong as the time of entry into the contract is more remote from the institution of litigation, especially if the party was not represented by counsel."
See, also, National Acceptance Co. v. Myco Products, Inc.,381 F. Supp. 269, 19 F.R. Serv.2d 167 (W.D.Pa. 1974).
 II. Fraud
The second, third, and fourth contentions of The Mall, listed above, essentially attack the jury's finding of fraud. We find no merit to these contentions. The trial court instructed the jury on the elements of four types of fraud: intentional fraud, reckless fraud, negligent fraud and deceit. Code 1975, §§6-5-100 through -103. The jury obviously believed The Mall committed intentional fraud. The trial judge instructed the jury that it could give punitive damages only if it first found The Mall to be guilty of intentional fraud. The jury awarded punitive damages. Whether The Mall suppressed a material fact, whether the misrepresentation was made with the intent to injure, and whether Robbins relied on it are all questions of fact for the jury. See Big Three Motors v. Smith,412 So.2d 1218 (Ala. 1982).
Testing the propriety of the trial court's overruling of The Mall's motions for directed verdict and J.N.O.V. against a "sufficiency of the evidence" challenge, we find the jury could reasonably conclude that The Mall intentionally misrepresented the true facts, considering all of the circumstances surrounding its initial refusal to accept Stonehenge as a tenant and its subsequent rental to Stonehenge. Despite the proponderance of the evidence indicating that The Mall rented to Stonehenge under different conditions than Robbins anticipated, there was some evidence which justified submitting the issue to the jury. That evidence supports the jury's finding that The Mall possessed the requisite present intent to deceive with respect to a future *Page 1201 
event. See Shiloh Construction Co., Inc. v. MercuryConstruction Corp., 392 So.2d 809 (Ala. 1981). The Mall's letter rejecting Stonehenge as a tenant "under any circumstances," coupled with its immediate contact of, and subsequent sublease to, Stonehenge following The Mall's receipt from Robbins of the prepayment of rent settlement, amply supports the jury's resolution of the factual dispute.
 III. Damages
The jury awarded $137,500 to Robbins. Of this sum, $3,742.57 represents past-due area maintenance and incidental charges owed by Robbins; $6,368 represents sums Robbins paid to Bruno's for two months' rent; and $20,000 represents the amount of prepaid rent Robbins paid to The Mall as a settlement of the lease. Some portion of the $137,500 represents lost future profits and the remainder represents punitive damages.
The amount of damages awarded Robbins for debts already incurred, $3,742.57, and for two months' rent to Bruno's after the proposed sublease would have taken effect, $6,368, are not recoverable.[2] In Amason v. First State Bank, 369 So.2d 547
(Ala. 1979), this Court held that payment of a debt that a person is under a pre-existing duty to pay is not a legal injury for which one may be recompensed. Robbins asserts that the rental payments for the two months after The Mall committed the fraud are not pre-existing debts. However, there is no evidence that Stonehenge could have taken possession of the premises at that time.
Robbins asserts that he may recover $36,800 in lost profits he might have made as a result of the proposed sublease. Generally, the rule in Alabama is that recovery of lost profits of collateral enterprises is not permitted, because the profits are too speculative. Wray v. Harris, 370 So.2d 974 (Ala. 1977);Paris v. Buckner Feed Mill, Inc., 279 Ala. 148, 182 So.2d 880
(1966); Blankenship v. Lanier, 212 Ala. 60, 101 So. 763 (1924).
The profits Robbins might have received as a result of the sublease to Stonehenge depended on the future success of an unestablished business. Robbins's profits were further contingent on Stonehenge's continued ability to meet its rental obligations. The evidence showed that at the time of trial Stonehenge was more than $31,000 in arrears on its rent. While subsequent business experience is not necessarily conclusive on the issue of lost profits, here, it demonstrates the wisdom of the rule which disallows such damages as too speculative. Thus, under the facts of this case, Robbins may not recover lost profits.
The evidence, then, supports an award for compensatory damages of $20,000. The award of $3,742.57 and $6,368 for pre-existing debts and $36,800 for lost profits exceeds by $46,910.57 any permissible award of compensatory damages.
We, therefore, require a remittitur of $46,910.57 as a condition to an affirmance of the trial court's order denying The Mall's motion for a new trial. In the event Robbins declines to file the required remittitur with the clerk of this Court within twenty-one days from the date of this opinion, the judgment will be reversed and the cause remanded for a new trial. Otherwise, the judgment as corrected on remittitur will be affirmed.
AFFIRMED CONDITIONALLY.
JONES, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX and ALMON, JJ., dissent.
[1] As the opinion subsequently indicates, the evidence shows that $20,000 of this total amount represents prepaid rent, while the balance represents rent and expenses already accrued.
[2] As we understand the record, the award does not include the amount of the prepaid rent — $11,968.