ROBERTSON, Presiding Judge.
Mickey Platt and Platt Homebuilders, Inc. (“PHI”), appeal from a summary judgment entered by the Circuit Court of Mobile County on their claims alleging, *580 among other things, fraudulent misrepresentation, fraudulent suppression, breach of contract, and breach of warranty against ERA Marie McConnell Realty, Inc. (“McConnell Realty”), and its agent, Jackie Green, arising out of the sale of six unimproved lots in Baldwin County. We affirm in part, reverse in part, and remand.
On July 1, 1997, Platt and PHI filed a complaint in the trial court, naming as defendants McConnell Realty; Green; Gary G. Tanner; Harold Garrison; and Herman Galant, as well as several fictitiously named persons; Tanner, Garrison, and Galant were also named as principals of Guy B. Franklin, a general partnership, and G.G. <& T., a joint venture. The nine-count complaint alleged, against each defendant, claims of fraudulent misrepresentation, fraudulent suppression, negligence, wantonness, breach of contract, breach of warranty, and negligence or wanton training and supervision of employees. After the claims against Tanner, Garrison, and Galant had been dismissed with prejudice, McConnell Realty and Green filed a motion for a summary judgment, supported by a brief, excerpts from deposition transcripts and exhibits thereto, and Platt and PHI’s interrogatory responses. Platt and PHI filed a brief in opposition to this motion, accompanied by their interrogatory responses and additional deposition excerpts and -exhibits. The trial court entered a summary judgment in favor of McConnell Realty and Green.
Platt and PHI appealed to the Alabama Supreme Court; that court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
Platt and PHI contend that the trial court erred in entering the summary judgment. However, other than a bare statement that “there is ample evidence establishing” a legal duty that would give rise to negligence or wantonness claims, they do not argue that the trial court erred in entering the summary judgment regarding the claims alleging negligence, wantonness, or negligent or wanton supervision or training. Therefore, as to these claims, the summary judgment is due to be affirmed. Leisure Am. Resorts, Inc. v. Knutilla, 547 So.2d 424, 425 n. 2 (Ala.1989); Rule 28(a)(5), Ala.R.App.P. Accordingly, we consider only Platt and PHI’s contentions regarding their breach-of-contract, breach-of-warranty, and fraud claims.
Rule 56, Ala.R.Civ.P., sets forth a two-tiered standard for determining whether to enter a summary judgment. In order to enter a summary judgment, the trial court must determine: 1) that there is no genuine issue of material fact and 2) that the moving party is entitled to a judgment as a matter of law. The burdens placed on the moving party by this rule have often been discussed:
“ ‘The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala.1977); Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co., 390 So.2d 601 (Ala.1980); Fulton v. Advertiser Co., 388 So.2d 533 (Ala.1980).’”
Berner v. Caldwell, 543 So.2d 686, 688 (Ala.1989) (quoting Schoen v. Gulledge, 481 So.2d 1094, 1096-97 (Ala.1985)). In determining whether a summary judgment was properly entered, the reviewing court must view the evidence in a light most favorable to the nonmovant. Long v. Jefferson County, 623 So.2d 1130, 1132 (Ala.1993). No presumption of correctness attaches a summary judgment, and our review is de novo. Hipps v. Lauderdale County Bd. of Educ., 631 So.2d 1023, 1025 (Ala.Civ.App.1993) (citing Gossett v. Twin County Cable T.V., Inc., 594 So.2d 635 (Ala.1992)).
We further note that Rule 56 is to be read in conjunction with the “substan *581 tial evidence rule” (§ 12-21-12, Ala.Code 1975). Hurst v. Alabama Power Co., 675 So.2d 397, 398 (Ala.1996). In order to defeat a defendant’s properly supported motion for summary judgment, the plaintiff must present “substantial evidence,” i.e., “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Id. (quoting West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).
Viewed in a light most favorable to Platt and PHI, the evidence suggests the following facts. In 1994, Green contacted Platt, the president of PHI, to determine whether he would be interested in purchasing, for $19,500 each, 10 lots on West First Avenue adjacent to Stanton Creek in Gulf Shores. When Platt declined this offer, Green informed him that other lots near the creek would soon be available, and Platt requested that Green call him when the owners were ready to sell them.
Green contacted Platt again in July 1995 and informed him that Lots 12, 13, 14, 15, 17, and 18 of Block 22, Unit 1, in Gulf Shores, located on West Second Street and abutting the creek, were for sale. These lots were owned by the Guy B. Franklin partnership, a partnership composed of Garrison, Galant, and Tanner. Platt and Green then entered into negotiations regarding the property. Platt indicated to Green that he was interested in the six lots because they were large enough for building duplexes, and he told Green, among other things, the conditions under which he would purchase the lots. Platt informed Green that he wanted to install a shell roadbed running along the creek and that he wanted the City of Gulf Shores to be able to install water and sewer connections at the lots. At that time, Green represented that West Second Street, which runs adjacent to the creek, provided access to the lots, and she assured Platt that that road could be used as a private drive.
Platt, relying upon these representations, signed a purchase contract form supplied by McConnell Realty, on July 16, 1995, wherein he made an offer of $120,000 to purchase the lots. The purchase contract form identified McConnell Realty as the listing and selling broker of the lots, identified the purchaser as ‘W.M. Platt,” afforded McConnell Realty four days to procure acceptance of Platt’s offer, stated that “REAL ESTATE AGENTS ARE NOT PRINCIPALS,” and provided that “[n]o representation or promise not included in this contract shall be binding upon any party hereto.” Platt’s offer of $120,000 for the lots was accepted by the Guy B. Franklin partnership.
After the contract had been entered into, but before the closing of the transaction and the transfer of title to the lots, it became apparent that there was a problem with access to the lots in question. Baldwin County revenue authorities had identified West Second Street as having been vacated by the City of Gulf Shores, and if the street had been legally vacated, the City could not access the lots to install water and sewer lines. However, Green indicated to Platt and to an employee of Sun Title Company that a title search had been performed on the lots; when the Sun Title employee asked to review the results of the title research, Green told her and Platt that the “legal department” of McConnell Realty had already looked at the title research results and that “everything appeared to be fine.” Additionally, a real estate attorney retained by Garrison concluded that the portion of West Second Street adjacent to the lots had not been vacated, and a copy of his letter was provided to Platt just before closing. However, the deed to the lots conveying title to PHI indicated that the conveyance was “subject to” several matters, including “[n]o visible means of ingress or egress to and from said property,” and the title insurance policy issued with respect to the transaction contained an exception concerning the ingress and egress issue.
*582 After closing, Platt discovered that the City of Gulf Shores had, in fact, vacated West Second Street, causing title to the property underneath the road to revert from Gulf Shores to the former titleholders, and he also discovered that McConnell Realty does not, in fact, have a “legal department.” Platt demanded a refund of his purchase money from Green; Green, however, refused to refund Platt’s purchase money. Platt held the lots for several months after the purchase, clearing the roadbed and the lots and surveying the lots so as to comply with federal regulations dealing with potential wetlands; he then sold the lots to another purchaser for $155,000.

I. Breach of contract/warranty

Platt and PHI contend that the trial court erred in entering the summary judgment on their claims asserting breach of contract and breach of warranty against Green and McConnell Realty. They rely upon this court’s opinion in Naramore v. Duckworth-Morris Realty Co., 669 So.2d 946 (Ala.Civ.App.1995), as authority. In Naramore, this court concluded that an agency disclosure in a real estate purchase contract that identified a real estate agency as representing the sellers, rather than the buyers, of a residence would not automatically bar a breach-of-contract claim against the agency based upon the agreement of one of its agents to undertake, on behalf of the buyers, an inspection of the residence to be purchased. While we concluded in Naramore that the agency had had no initial duty to help obtain the house inspections for the purchasers, we also concluded that the agency in that case had gone beyond what was required and had created a “special relationship” separate and apart from the fiduciary obligations that the agency owed to the seller. 669 So.2d at 950.
There is no indication that Green or other agents of McConnell Realty ever agreed to any undertaking other than to supply a willing buyer for the six lots in question. Although in his deposition Platt testified to the effect that Green knew that he wanted lots large enough for building duplexes, that he wanted to install a shell roadbed running along the creek, and that he wanted the City of Gulf Shores to be able to install water and sewer connections at the lots, there is no evidence tending to show that Green ever agreed to procure such property for him, or that she had agreed to represent his interests in any potential purchase transaction. Neither is there evidence that Green or McConnell Realty undertook an extracontractual obligation on Platt’s behalf to ensure that the lots described in the purchase contract form actually did have a means of ingress and egress. Thus, we conclude that Nara-more is distinguishable from this case and that the trial court properly entered the summary judgment as to the claims of Platt and PHI against Green and McConnell Realty based upon contract or warranty theories.

II. Breach of fiduciary duty

Platt and PHI contend that the trial court improperly entered the summary judgment as to their claims of breach of fiduciary duty. They characterize their claim as being in the nature of a fraudulent-suppression claim arising from Green’s failure to reveal that West Second Street had been vacated, and they argue that what they call Green’s “superior position” to know the facts requires a finding that they were involved in a fiduciary relationship with Green.
In light of recent opinions of the Alabama Supreme Court in this area of the law, we cannot agree with Platt and PHI that Green’s having greater experience in the real estate business than Platt is a sufficient basis for concluding that Green owed a fiduciary duty to Platt and PHI. In State Farm Fire & Cas. Co. v. Owen, 729 So.2d 834 (Ala.1998), the Alabama Supreme Court overruled a number of cases in holding that the existence of a duty to disclose a fact in a given situation is a legal, rather than a factual, question. In doing so, it specifically rejected the propo *583 sition that superior knowledge of a fact, without more, imposes a duty to disclose. See 729 So.2d at 837. Instead of adopting a per se rule, the Alabama Supreme Court considered a number of factors, including “(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiffs opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances.” 729 So.2d at 842-43. The plaintiff in Owen, the court noted, was educated; had “not come to the table without any knowledge of’ practices in the defendant’s business (i.e., insurance); and had not inquired about the defendant’s internal procedures concerning ratemaking or replacement; accordingly, it reversed a judgment in favor of the plaintiff on her fraudulent-suppression claims. 729 So.2d at 843.
In this case, the record reveals that Platt had engaged in “plenty” of real estate transactions, dating back to 1978, before entering into his agreement in July 1995 to purchase the six lots in question from the Guy B. Franklin partnership. Moreover, McConnell Realty, the agency for which Green was working, was identified in the purchase contract form as representing the seller in the transaction, not Platt or PHI, and it is customary in the real estate trade for a selling agent, such as Green, to represent the seller of realty (rather than the buyer), in exchange for a portion of the commission due from the seller to a listing agent. Thus, considering these factors, as Owen requires a reviewing court to do, we conclude that the trial court correctly determined that Green and McConnell Realty owed Platt and PHI no fiduciary duty in connection with Platt’s purchase of the six lots in question.

III. Fraudulent misrepresentation

Because this action was filed after March 14, 1997, the date on which Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997), was decided, the applicable substantive law to be applied in reviewing Platt and PHI’s claims of fraudulent misrepresentation is enunciated in Torres v. State Farm Fire & Cas. Co., 438 So.2d 757 (Ala.1983), which set out a “reasonable reliance” standard for evaluating such claims:
“A cause of action for misrepresentation exists when the plaintiff relies on a misrepresentation of a material fact and suffers damages as the proximate result of his reliance on the misrepresentation. Section 6-5-101, Code of Alabama....
“Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one’s own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs’ reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover. Bedwell Lumber Co. v. T & T Corporation, 386 So.2d 413, 415 (Ala.1980).
“ ‘If the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, “volun-tó non fit injuria”.’
“Munroe v. Pritchett, 16 Ala. 785, 789 (1849).”
Torres, 438 So.2d at 758-59.
Because Platt became obligated to purchase the lots within four days of his signing the July 16, 1995, purchase contract form, i.e., when his offer of $120,000 was accepted by the Guy B. Franklin partnership, we limit our consideration to representations allegedly made by Green before the contract was entered into. This excludes Green’s alleged pre-closing representations concerning title research on the lots and concerning McConnell Realty’s “legal department,” because these repre *584 sentations, even if made, could only have caused Platt to do that which he was already contractually obligated to do—purchase the lots at issue. See Reeves v. Porter, 521 So.2d 963, 967-69 (Ala.1988) (holding that representations made by a vendor’s agent concerning water damage to a dwelling, after the purchasers had executed a real estate contract, were not material because the representations would have caused the purchasers to do precisely what they were contractually obligated to do).
However, Green’s alleged precontractual representations to Platt, i.e., that West Second Street provided access to the lots and that that road could be used as a private drive, remain to be considered. In this regard, McConnell Realty and Green contend that the trial court correctly entered the summary judgment because, they say: (1) the language of the contract and the closing documents preclude Platt and PHI from asserting fraud claims; (2) reliance upon the representations would have been unreasonable as a matter of law; (3) Platt disclaimed reliance upon Green’s statements; and (4) Green’s statements were not actionable representations of fact, but of opinion or of law. We address these in turn.
The purchase contract form executed by Platt contains language providing that the contract “constitutes the sole agreement between the parties herein,” that “[n]o representation or promise not included in this contract shall be binding on any party hereto,” and that the purchaser (Platt) “agrees to accept [the property] in Its present condition.” However, even if it were assumed that McConnell Realty and Green were parties to this agreement, which by its terms is between the “purchaser” and the “seller,” the disclaimers relied upon would not bar a claim of fraud contributing to the inducement of the contract. In Environmental Sys., Inc. v. Rexham Corp., 624 So.2d 1379 (Ala.1993), the Alabama Supreme Court reaffirmed that neither the parol evidence rule nor an integration or “disclaimer” clause will bar a claim arising from misrepresentations of material, existing facts that induce a party to enter into a contract: “when an agreement has been induced by deliberate fraud, the written document reciting that agreement is void and is of no more binding efficacy than if it had no existence, or were a piece of waste paper.” 624 So.2d at 1385. Thus, the portions of the purchase contract form relied upon by Green and McConnell Realty cannot, as a matter of law, defeat Platt’s fraud claim to the extent that it is based upon representations allegedly made by Green that induced Platt to purchase the six lots at issue.
We reach the same conclusion as to the language of the deed and the policy of title insurance. While both of these documents contain reservations concerning the apparent lack of ingress to or egress from the lots Platt purchased, they were prepared several weeks after the contract obligating Platt to purchase the property had been entered into, long after Platt could have rescinded his offer for the lots.
Citing Locklear Dodge City, Inc. v. Kimbrell, 703 So.2d 303 (Ala.1997), Green and McConnell Realty contend that reliance upon Green’s alleged representation that West Second Street provided access to the lots and that that road could be used as a private drive would have been was unreasonable as a matter of law. However, Locklear Dodge involved a suppression claim arising from a statement by an employee of an automobile dealership that, to his knowledge, the car eventually purchased by the plaintiff in that case had not been in an accident. Also, the sales contract in that case specifically informed the plaintiff that the vehicle she was purchasing “may have been involved in accidents ” (emphasis added), and that the dealership had made no representations concerning that fact. The basis of the reversal in Locklear Dodge was that a suppression claim cannot be maintained *585 where a disclosure specifically reveals “the possibility of the kind of damage the buyer alleges was suppressed.” 703 So.2d at 305.
Here, no such disclosure was made to Platt before he entered into the contract to purchase the lots. Viewing the evidence in a light most favorable to Platt, one could conclude that Platt informed Green, McConnell Realty’s agent, that he wanted to install a shell roadbed running along the creek and that he wanted the City of Gulf Shores to be able to install water and sewer connections at the lots. Green, in turn, represented that West Second Street provided access to the lots and could be used as a private drive. Nothing in the contract itself indicates that Platt was informed of the possibility that West Second Street may have been vacated by the City of Gulf Shores so that Platt could be said to have been apprised of the specific defect in access to the lots that later became apparent. Moreover, as both Green and McConnell Realty have conceded, neither of them is a party to the purchase contract, although McConnell Realty is mentioned as the listing and selling broker.
As this court has stated, “[t]he law is clear that a seller’s misrepresentation of a material fact which acts as an inducement to purchase and upon which the purchaser reasonably relies constitutes fraud” and “reliance is reasonable in the absence of independent knowledge sufficient to arouse the purchaser’s suspicion, and he is not obligated to make an independent investigation as to the truth of the seller’s representations absent such knowledge.” Saranthus v. McIntyre, 557 So.2d 1275, 1276 (Ala.Civ.App.1989); see also Dickinson v. Moore, 468 So.2d 136, 138 (Ala.1985) (one acquiring real property is not obligated to examine public records in order to ascertain true nature of title). Further, we note that a real estate agent representing the seller is subject to similar principles of liability if he or she misrepresents a material fact about property he or she is trying to sell. See Boswell v. Coker, 519 So.2d 493, 495 (Ala.1987).
Although there was evidence that Platt had declined to purchase Lots 1-10 in 1994 because of an access problem, Platt’s source of information concerning that access problem and of the seeming lack of an access problem with respect to the six lots he eventually contracted to purchase was, on both occasions, Green’s statements. We cannot hold, as Green and McConnell Realty would have us hold, that Platt was required to independently investigate the truth of Green’s representations concerning access to the six lots Platt purchased as a prerequisite to asserting a fraudulent-misrepresentation claim.[1]
The dissent concludes that Platt’s reliance was unreasonable based upon, evidence that (1) he was aware that the street was not being maintained before he executed the purchase contract, and (2) he read the title policy and the warranty deed, both of which contain language tending to exclude ingress and egress, before closing. However, whether West Second Street was or was not being maintained has no bearing upon whether the City of Gulf Shores held title to the streets^ the courts of this state are routinely confronted with contentions that municipalities have violated § 11-47-190, Ala.Code 1975, by negligently maintaining, or failing' or refusing to maintain, public streets and roads. Also, any awareness of an access problem that Platt may have had after he had entered into the purchase contract is immaterial for the same reason, under Reeves, that Green’s representations after that date are immaterial — once the purchase contract was accepted by the Guy B. Franklin partnership, Platt was contractually bound to perform.
*586 The remaining contentions of Green and McConnell Realty concerning Platt’s misrepresentation claim may be briefly addressed. Although Platt did testify at his deposition that he had been given a letter from the seller’s attorney on August 25, 1995, just before closing, in which the attorney had opined that West Second Street had not been legally vacated by the City of Gulf Shores, this postcon-tract representation logically could not have induced him to enter into the purchase contract on July 16, 1995, and Platt’s alleged “reliance” upon that letter is immaterial to his misrepresentation claim to the extent that that claim is based upon Green’s alleged precontractual assurances. Neither can we conclude that Green’s statements were merely expressions of opinion. Compare, e.g., Jones v. McGuffin, 454 So.2d 509, 512 (Ala.1984) (concluding that statement of structural engineer that house was in “excellent structural condition” was not actionable). Also, while Green and McConnell Realty contend that the statements allegedly made by Green concerning the status of West Second Street were statements of law, and that, as a general rule, statements of law do not amount to fraud, a representation of law “amount[ing] to an implied assertion that facts^ existed which justified the conclusion of law expressed” is nevertheless actionable. Empiregas, Inc. v. Hardy, 487 So.2d 244, 248 (Ala.1985), cert. denied, 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 657 (1986).

TV. Standing and damages

Green and McConnell Realty have asserted two other grounds that they contend warrant affirmance of the summary judgment in whole or in part. They contend (1) that Platt and PHI have suffered no damages from the alleged conduct of Green and McConnell Realty, and (2) that in his individual capacity Platt does not have standing to assert claims. We address these in turn.
As a general rule, damages awarded for fraud are fixed at an amount that would place the defrauded person in the position he or she would have occupied had the representations been true. See Buchanan v. Collier, 555 So.2d 134, 136 (Ala.1989). Specifically, this court has stated that the measure of damages in a misrepresentation action involving the sale of real property “is the difference between the actual value of the property at the time of sale and what it would have been had it been as represented.” Hartselle Real Estate & Ins. Co. v. Atkins, 426 So.2d 451, 452 (Ala.Civ.App.1983) (citing Boriss v. Edwards, 262 Ala. 172, 77 So.2d 909 (1954), and Martin v. Honeycutt, 341 So.2d 171 (Ala.Civ.App.1976)).
The evidence indicated that Platt purchased the six lots at issue for $120,000 and sold them in December 1996 for $155,000, after Platt had performed some work on the property. The dissent contends that this raw showing of profit negates any possibility that Platt suffered damages from Green’s alleged representations. However, Green and McConnell Realty did not make a prima facie showing that the value of the lots, if there had been a means of ingress and egress as Green purportedly represented there was, would have been the same as (or less than) the price Platt paid for the lots in their actual condition, i.e., with no visible means of ingress or egress. This was, under Hart-selle Real Estate, supra, the proper measure of Platt’s damages, if any, and it was the duty of Green and McConnell Realty, under Berner, supra, to make a prima facie showing that Platt sold the property for at least as much as it would have been worth had Green’s alleged representations been true. Absent that showing, whether Platt provided substantial evidence that he suffered damages is immaterial.
As the record now stands, this element of damages must be submitted to the trier of fact for resolution, along with other potentially recoverable elements of consequential damages. Because genuine issues *587 of fact concerning such potentially recoverable elements of damages remain, we need not reach the question whether the lost profits claimed by Platt and PHI with respect to the subsequent resale of the property are “too speculative” under the principles enunciated in Mall, Inc. v. Robbins, 412 So.2d 1197 (Ala.1982), which bars recovery for the lost profits of “collateral enterprises” (412 So.2d at 1201).
We likewise reject Green and McConnell Realty’s contention that Platt lacks standing, in his individual capacity, to assert a fraudulent-misrepresentation claim. Contrary to Green and McConnell Realty’s assertions in their brief, the purchase contract form indicates that Platt signed the form as purchaser, not in his capacity as president of PHI. There is authority for the proposition that Platt’s signing the purchase contract form in his own name, rather than in the name of PHI, “could in itself create personal liability on his part” for any breach thereof. See B & M Homes, Inc. v. Hogan, 376 So.2d 667, 676 (Ala.1979). Green’s representations were made directly to Platt, and Platt testified at his deposition that he entered into the contract to purchase the lots in reliance upon these representations and that he tendered a cashier’s check to the Guy B. Franklin partnership for the stipulated purchase price at closing. Thus, because Platt was individually obligated, under the purchase contract form, to supply the consideration for the purchase of the six lots at issue, and because he relied upon Green’s representations in entering into the contract, we conclude that he is a proper party plaintiff in this action. See National States Ins. Co. v. Jones, 393 So.2d 1361, 1364 (Ala.1980) (holding that niece of insured had standing to bring fraud action where representations had been made to her and where she had paid the insurance premiums).

Conclusion

Based upon the foregoing facts and authorities, we affirm the summary judgment in favor of Green and McConnell Realty as to all claims except Platt and PHI’s fraudulent-misrepresentation claim arising from misrepresentations allegedly occurring before Platt and the Guy B. Franklin partnership entered into their purchase contract. As to that claim only, we reverse the summary judgment, and we remand the cause for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES and MONROE, JJ., concur.
CRAWLEY and THOMPSON, JJ., concur in part and dissent in part.

. In fact, had Platt conducted such an investigation, McConnell Realty and Green would undoubtedly assert — not without authority— that Platt had not actually "relied” upon Green’s statements at all. E.g., Smith v. J.H. Berry Realty Co., 528 So.2d 314, 316 (Ala.1988).