We granted certiorari in this case to determine whether the Court of Civil Appeals erred in reversing the summary judgment entered in favor of ERA Marie McConnell Realty and its real estate agent, Jackie Green, (the defendants) on a claim of fraudulent misrepresentation asserted by Mickey Platt and Platt Homebuilders, Inc. (the plaintiffs, or "Platt"). The plaintiffs' fraud claim is one of many claims arising from the plaintiffs' purchase of six undeveloped lots on West Second Street in Gulf Shores, Alabama. The trial court entered a summary judgment in favor of the defendants on all claims. Upon the plaintiffs' appeal, the Court of Civil Appeals affirmed the judgment of the trial court on all claims except the plaintiffs' fraud claim. Platt v. ERA MarieMcConnell Realty, Inc., 774 So.2d 577 (Ala.Civ.App. 1999).
In their complaint, the plaintiffs alleged that "[t]he [d]efendants negligently, recklessly, wantonly, or intentionally failed to disclose, failed to discover, and/or otherwise failed to determine the legal ingress and egress to the lots sold to the [p]laintiffs, being that described as West Second Street." The plaintiffs claimed that Platt did not discover that West Second Street "had been reportedly vacated and [that] there was a dispute regarding legal ingress or egress to the lots" until after the closing.
The defendants moved for a summary judgment on the ground that Platt could not have reasonably relied on the defendants' representations because he was aware of the problems with ingress to and egress from the lots before he signed the purchase contract and before he closed on the sale. In support of the defendants' motion, they included Platt's deposition testimony revealing that Platt was aware of the problems with ingress to and egress from the property before he contracted to purchase the property; a June 14, 1995, letter addressed to Harold Garrison, one of the owners of West Second Street, from Attorney Thomas Klyce stating that he had researched the records and tax plats of the lots on West Second Street and had concluded that the portion of West Second Street in question had not been vacated although "the tax plat shows a portion of West Second Street as being vacated;" and a title insurance policy on the lots on West Second Street, which recited "no visible means of ingress and egress to and from said property."
In response to the defendant's motion for a summary judgment, the plaintiffs contended that their purchase of the lots was conditional on the city's not having vacated West Second Street and on West Second Street's providing ingress to and egress from the lots. They claimed that they would not have purchased the lots absent the defendants' assurances, during contract negotiations and before closing, that West Second Street provided ingress to and egress from the lots. In support of their argument, the plaintiffs included a portion of Platt's deposition testimony; an affidavit from Rita Green, an employee of Sun Title Company; a purchase contract for the lots; a deed; and a title insurance *Page 590 
policy reciting "no visible means of ingress and egress to and from said property."
In deciding the defendant's motion for a summary judgment, the trial court considered the following facts in the evidentiary materials submitted by the parties. As the owner of Platt Homebuilders, Inc., Platt purchased and developed undeveloped lots. In the first few months of 1995, Jackie Green called Platt to inquire whether he would be interested in purchasing some lots on West First Avenue. After viewing the property with Green, Platt informed her that he was not interested in purchasing those lots. At that time, Green told Platt that she might be able to sell him some lots bordering Stanton Creek on West Second Street
but that there were some problems with ingress to and egress from the lots. Green then showed Platt the lots on West Second Street. Platt noticed that West Second Street abutted Fifth Avenue, a gravel road which he knew had been legally vacated by the City of Gulf Shores, and that the gravel on Fifth Avenue did not extend onto West Second Street. Platt noticed also that West Second Street was covered with trees, debris, and a lot of undergrowth. Platt testified that he knew that there were "some problems with ingress [to] and egress" from the lots "because there was a vacated road between the lots and the water." Platt did not ask Green whether the City of Gulf Shores had vacated West Second Street. Rather, he determined from his observations of the street that "[i]t wasn't maintained. It had trees 18 to 20 inches indiameter growing in the middle of it." (Emphasis added.)
On July 16, 1995, Platt contracted to purchase six undeveloped lots on West Second Street for $120,000. Platt testified that, at the time he signed the purchase contract, he was aware that West Second Street was covered with undergrowth, trees, and debris and that no visible means of ingress to and egress from the lots existed. While Platt acknowledged that the road was not being maintained by any governmental body, he did not, before he entered the contract, specifically ask Green whether the road had been vacated. However, Platt claimed his concern about whether West Second Street had been vacated and whether it provided ingress to and egress from the lots was expressed in the following written condition he had Green add to his purchase contract:
 "Offer subject to approval from City of Gulf Shores to install at their expense water and sewer lines. Buyer to install culvert and have easement cleared for City at his expense. Buyer is aware of possible wet-land building restrictions."
The relation between this condition and the status of West Second Street was that the city would not install water and sewer lines at its own expense in a vacated street. Platt testified further that, sometime after he contracted to purchase the six undeveloped lots, Green called him and told him that West Second Street hadnot been vacated and that West Second Street provided ingress toand egress from the lots. Platt stated also that, a few days prior to the closing, Green represented to him and Rita Green, an employee of Sun Title Company, that "the legal department at ERA Marie McConnell Realty had already looked at the title research results and everything appeared to be fine." Additionally, Harold Garrison, one of the owners of the property, hired an attorney to investigate the vacation of the road; and Garrison informed Platt that Garrison's attorney did not believe the road had been legally vacated. On the closing date, Garrison gave Platt an application for a permit to construct a culvert system on the lots and a letter stating that the attorney whom Garrison hired to investigate the vacation of the property, "having made reasonable effort to determine otherwise, conclude[d] that the portion of West Second Street in question ha[d] not been vacated."
Platt did not conduct any independent research on whether West Second Street had been vacated. Sometime after closing *Page 591 
his purchase of the lots, however, Platt learned that West Second Street had been vacated. At an expense of $5,500, Platt removed debris, undergrowth, and trees 18-to-20 inches-in-diameter from West Second Street and resold the lots for $155,000.
The plaintiffs complain that Green's representations that West Second Street had not been legally vacated and that West Second Street provided ingress to and egress from the lots induced Platt to enter the purchase contract. They claim that like representations were made by Green and by the sellers after the execution of the contract and before the closing fraudulently to assure Platt that the written condition included in the purchase contract could be satisfied. The representations made both before Platt signed the contract and after he signed the contract arematerial to his entering the contract and his closing the purchase. The dispositive issue before this Court, however, iswhether Platt's reliance on the defendants' representations wasreasonable.
A cause of action for misrepresentation arises when the plaintiff relies on a misrepresentation of a material fact and suffers damages because of his or her reliance. §6-5-101, Ala. Code 1975. Because the plaintiffs' complaint was filed after March 14, 1997, the "reasonable-reliance standard" applies. Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala. 1997) (prospectively rejecting the justifiable-reliance standard and readopting the previously existing reasonable-reliance standard). A purchaser's "reliance is reasonable in the absence ofindependent knowledge sufficient to arouse the purchaser'ssuspicion, and he is not obligated to make an independent investigation as to the truth of the seller's representations absent such knowledge." Saranthus v. McIntyre, 557 So.2d 1275,1276 (Ala.Civ.App. 1989) (emphasis added). "If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover." Torres v. State Farm Fire Cas.Co., 438 So.2d 757, 759 (Ala. 1983) (citing Bedwell Lumber Co. v.T T Corp., 386 So.2d 413, 415 (Ala. 1980)). While this Court has held that real estate brokers and salespersons may be held liable for representations they make to induce a purchaser to act,see Earle, McMillan Niemeyer, Inc. v. Dekle, 418 So.2d 97 (Ala. 1982), "`[i]f the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, "volunti non fitinjuria".' Munroe v. Pritchett, 16 Ala. 785, 789 (1849)." Torres,supra, at 759.
The evidence conclusively establishes that Platt's reliance fails the tests of the reasonable-reliance standard. He had personal knowledge of big trees growing in the middle of West Second Street, together with undergrowth and debris, and he had personally received conflicting information regarding the vacation status of West Second Street and its availability for ingress to and egress from the lots, before he executed the contract and before he closed the purchase.
Because the evidence conclusively negates the essential element of reasonable reliance in Platt's fraud claim, the trial court properly entered a summary judgment in favor of the defendants. Therefore, the Court of Civil Appeals erred in reversing the fraud-claim aspect of the judgment of the trial court. Consequently, we remand this cause to the Court of Civil Appeals for it to issue a judgment consistent with this opinion.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, Cook, See, Lyons, Brown, and England, JJ., concur.
Houston, J., concurs specially.