797 So.2d 470 (2000)
FRANK CRAIN AUCTIONEERS, INC.
v.
Randy DELCHAMPS et al.
2990307.
Court of Civil Appeals of Alabama.
July 21, 2000.
Rehearing Denied September 15, 2000.
Certiorari Denied April 27, 2001.
*471 David F. Walker and A. Carson I. Nicolson of Miller, Hamilton, Snider & Odom, L.L.C., Mobile, for appellant.
Goodman G. Ledyard and J. Robert Turnipseed of Pierce, Ledyard, Latta & Wasden, P.C., Mobile, for appellees.
Alabama Supreme Court 1000085.
CRAWLEY, Judge.
This appeal arises out of an interpleader action commenced by Coastal Title Company, the holder of $31,900 in disputed funds, to determine the right to a real-estate commission claimed by both Frank Crain Auctioneers, Inc., and Randy Delchamps. The trial court awarded the funds to Delchamps; Crain appeals.
The evidence adduced at trial was largely undisputed. Crain is a Kentucky reale-state auctioneer that conducted an auction sale in Baldwin County on March 27, 1999. Before the sale, Crain sent out brochures describing the properties offered for sale and mailed postcards to local real-estate agents. Delchamps, a licensed real-estate broker and the owner of Randy Delchamps Real Estate Development Company in Mobile, received a postcard from Crain that stated:
"We welcome the participation of other real estate professionals in this important auction. A fee equal to two percent (2%) top bid price will be paid from the auctioneer's commission to any licensed real estate broker or salesperson whose prospect successfully closes on the property. To qualify for payment of commission, your prospect must be registered with Frank Crain Auctioneers forty-eight (48) hours prior to the auction. The broker or salesperson must attend and register his or her prospect on the day of the auction and must be present at the signing of the sales contract."
Delchamps read the postcard and asked his administrative assistant, Tracy Castillow, to "make sure that we get registered" for the auction. Castillow telephoned Crain's office, spoke to someone named "Susan," stated that she was calling on behalf of Randy Delchamps Real Estate, and inquired what she needed to do to register Delchamps for the auction. Susan took Delchamps's name, address, and fax telephone number and told Castillow that she "had [Delchamps] registered." Castillow did not say that Delchamps had a prospective buyer or that he expected to earn a 2% sales commission. Susan did *472 not ask whether Delchamps wanted to register a prospective buyer.
Delchamps attended the auction on March 27, 1999. When he arrived, David Rice, a Crain employee who was conducting the auction, gave him a bid card and a brochure on the properties to be auctioned and said, "I have you registered." Delchamps did not tell Rice that he was expecting a commission from any sale at the auction, nor did Rice tell Delchamps that he might earn such a commission.
With a bid of $1,595,000, Delchamps was the highest bidder on one parcel of property. After the auction, he gave Rice a personal check, signed "Randy Delchamps," as a deposit for 10% of the bid and signed a contract to buy the property in the name of "Randy Delchamps and/or assigns." He explained that he added the phrase "and/or assigns" because he "was not buying [the property] just for [him]self." He testified that he had a group of investors who would be interested in the property, but he did not yet know the name of the entity that would be formed to buy the property. The closing was set for 60 days after the auction. Before the closing, Delchamps and his investors formed a limited liability corporation, "D.M.M.H.K., L.L.C.," to buy the property. Delchamps owns a 25% interest and is the managing member of the L.L.C.
Sometime during the 60-day interim, Delchamps inquired about a commission; Crain refused to pay him one, stating that he had not complied with the terms of the offer. The parties agreed to have Coastal Title, the closing agent, deposit with the court the funds representing the disputed commission and to interplead the parties claiming those funds.
At trial, Delchamps claimed that he was entitled to the funds, based on theories of breach of contract, quantum meruit, work and labor done, and fraud by Crain. The trial court's judgment ordering that the interpleaded funds be disbursed to Delchamps does not specify the basis for its ruling. Crain argues that Delchamps presented no evidence supporting any of his theories. We agree.

The Breach-of-Contract Claim
Delchamps was not entitled to prevail on his breach-of-contract claim because the evidence established without dispute that he and Crain did not have a contract for Crain to pay Delchamps a real-estate commission. By its postcard, Crain made an offer to pay a 2% sales commission to any broker (1) who registered a prospective buyer 48 hours before the auction, (2) who attended the auction and registered his prospective buyer on the day of the auction, and (3) whose buyer successfully closed on the property. An offer alone, however, does not create a contract. Wright v. Schwerman Trucking Co., 555 So.2d 1119, 1120 (Ala.Civ.App. 1989). "There is no breach of contract unless there was previously an offer and acceptance." Sly v. First Nat'l Bank of Scottsboro, 387 So.2d 198, 200 (Ala.1980) (emphasis added).
Delchamps could have accepted the offer only by complying with the terms of the offer and registering his prospect, as the postcard outlined.
"It is familiar law that `the offerer has a right to prescribe in his offer any conditions as to time, place, quantity, mode of acceptance, or other matters which it may please him to insert in and make a part thereof, and the acceptance, to conclude the agreement, must in every respect meet and correspond with the offer, neither falling short or going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand.'"
*473 Ingalls Steel Prods. Co. v. Foster & Creighton Co., 226 Ala. 122, 125, 145 So. 464, 466 (1932).
"When an offeror dictates the manner in which acceptance is to be indicated, a manifestation of assent by some other means will not usually result in the formation of a contract. See 1 Williston on Contracts, § 76 (1957)."
Hall v. Integon Life Ins. Co., 454 So.2d 1338, 1342 (Ala.1984).
Delchamps did not accept Crain's offer. He did notwithin 48 hours of the auction or at any other timeregister a prospective buyer with Crain. He did not inform Crain that he had a buyer other than himself or that he expected to be paid a commission. He signed the purchase contract in his individual capacity as "Randy Delchamps and/or assigns." Only later, after he had assigned the purchase contract to an L.L.C. he had formed with a group of investors, did Delchamps inform Crain that he wanted the commission. Although Delchamps may have thought he had accepted Crain's offer, he did not communicate his acceptance to Crain and did not comply with the manner of acceptance specified in the offer.
"Where an express acceptance is required by an offer, the fact of the acceptance must be communicated to the offeror by the offeree or his agent; a mere private uncommunicated assent will not effect a contract."
17 Am.Jur.2d Contracts § 43 (1964). See also Restatement (2d) of Contracts § 69 (1981); Corbin on Contracts § 75 at 321 (1963). Delchamps did not prove his contract claim.

The Fraud Claim
To recover for fraud, Delchamps was required to prove that he reasonably relied[1] on a misrepresentation of a material fact and that he suffered damages because of his reliance. Ex parte ERA Marie McConnell Realty, Inc., 774 So.2d 588 (Ala.2000). See § 6-5-101, Ala.Code 1975. Delchamps was not entitled to prevail on his fraud claim because he did not establish that Crain made a misrepresentation to him or that he reasonably relied on any representation that Crain did make.
Delchamps argues that the misrepresentation occurred when Crain's employees "Susan" on the telephone and Rice at the auctionassured him that he was "registered" for the auction. Delchamps established the making of the statement, "You are registered," but he did not establish that the statement was a misrepresentation. Rice acknowledged telling Delchamps, "along with probably 20 other people," that he was registered to bid at the auction. He explained that anyone, either an individual or a real-estate professional representing a prospective buyer, could and did bid at the auction. Rice stated that he did not know that Delchamps was a real-estate professional, that Delchamps was claiming to represent a prospective buyer, or that Delchamps was seeking a sales commission. Rice simply did not make any misrepresentation to Delchamps. Cf. Brushwitz v. Ezell, 757 So.2d 423 (Ala.2000) (holding that a real-estate appraisal was not a guarantee of the condition of the residence, but a valuation of the residence, and thus not a misrepresentation).
Moreover, Delchamps's interpretation of the statement "You are registered" to mean "You are entitled to receive a commission on any sale" was unreasonable, given the clear and unequivocal language *474 of the postcard setting out the requirements for earning a commission.
"`If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover.' Torres v. State Farm Fire & Cas. Co., 438 So.2d 757, 759 (Ala.1983) (citing Bedwell Lumber Co. v. T & T Corp., 386 So.2d 413, 415 (Ala.1980)). While this court has held that real estate brokers and salespersons may be held liable for representations they make to induce a purchaser to act, see Earle, McMillan & Niemeyer, Inc. v. Dekle, 418 So.2d 97 (Ala.1982), `"`[i]f the purchaser blindly trusts, where he should not, and closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, "volunti non fit injuria".'"' Munroe v. Pritchett, 16 Ala. 785, 789 (1849). Torres, supra, at 759."
Ex parte ERA Marie McConnell Realty, Inc., 774 So.2d at 591.
Delchamps did not prove either that Crain made a misrepresentation or that Delchamps reasonably relied on any statement by Crain. Therefore, Crain was entitled to a judgment as a matter of law on Delchamps's fraud claim.

The Work-and-Labor-Done/Quantum Meruit Claim
Delchamps also did not prove his claim based on the theories of quantum meruit or work and labor done. Both of these theories for equitable relief are methods of avoiding unjust enrichment and both require the existence of a contract, either express or implied. See United States ex rel. Eastern Gulf, Inc. v. Metzger Towing, Inc., 910 F.2d 775 (11th Cir.1990); G.S. Gothard & Son Contractors, Inc. v. Mansel, 611 So.2d 1101 (Ala. Civ.App.1992).
"There are two kinds of implied contracts those implied in fact and those implied in law. Contracts implied in law are more properly described as quasi or constructive contracts where the law fictitiously supplies the promise [to pay for the labor or services of another] to prevent a manifest injustice or unjust enrichment."
Green v. Hospital Bldg. Auth. of the City of Bessemer, 294 Ala. 467, 470, 318 So.2d 701, 704 (1975). "The rule is that if one knowingly accepts services rendered by another, and the benefit and result thereof, the law implies a promise on the part of the one who so accepts with knowledge, to pay the reasonable value of such services rendered." Richards v. Williams, 231 Ala. 450, 453, 165 So. 820, 823 (1936). In order to succeed on a claim of unjust enrichment, the plaintiff must show that it had a reasonable expectation of compensation for its services. Utah Foam Prods., Inc. v. Polytec, Inc., 584 So.2d 1345, 1350 (Ala.1991).
Applying these principles to the undisputed facts of this case, it is clear that Crain was entitled to a judgment in his favor. The parties did not have a contract, either express or implied, for Crain to pay Delchamps a commission. Delchamps failed to prove that Crain accepted his services either with knowledge that he was a broker or with knowledge that he was representing a prospective buyer. In addition, Delchamps failed to prove that he had a reasonable expectation of being compensated with a sales commission.
The judgment of the circuit court is reversed, and the cause is remanded with instructions to enter a judgment in favor of Crain.
REVERSED AND REMANDED.
YATES and MONROE, JJ., concur.
ROBERTSON, P.J., and THOMPSON, J., dissent.
*475 THOMPSON, Judge, dissenting.
I must respectfully dissent. I would affirm the judgment of the trial court.
ROBERTSON, P.J., concurs.
NOTES
[1] Because the action was filed after March 14, 1997, the reasonable-reliance standard of Foremost Ins. Co. v. Parham, 693 So.2d 409 (Ala.1997), applies.