MAIN, Justice.
BancorpSouth Bank (“the Bank”) petitions this Court for a writ of mandamus directing the trial court to vacate its order denying the Bank’s motion to strike the jury demand in the complaint filed against it by Thomas L. Busby and to enter an order granting the Bank’s motion, thereby enforcing Busby’s waiver of a jury trial. We grant the petition and issue the writ.
*165 I. Factual Background and Procedural History
Busco, LLC, a limited-liability company of which Busby was a member, built a house for resale using the proceeds from a construction loan provided Busco by the Bank. Busco sold the house to Jeanette Sims, whose mortgage loan was insufficient to pay the construction loan in full. The Bank then loaned Sims $70,000 to pay off the construction loan and to provide funds for additional improvements to the house. In connection with the Bank’s loan to Sims and the later refinancing of that loan, Busby signed three documents, one each in 2008, 2009, and 2010, entitled “Unconditional and Continuing Guaranty.” Each guaranty agreement consisted of two pages and contained the following language on the first page in the same type size as the other language:
“7. Waivers. Guarantor expressly waives TRIAL BY JURY per Section 22
[[Image here]]
(Capitalization in originals.)
Each guaranty agreement contained the following language on the second page in Section 22, which, as the last section of the agreement, was located a few inches above the signature line and which provided in bold, capitalized type:
“22. Waiver of Trial by Jury. GUARANTOR AND BANK WAIVE ANY RIGHT OF TRIAL BY JURY IN ANY ACTION BY BANK OR BY GUARANTOR IN ANY WAY CONNECTED WITH THIS GUARANTY, THE OBLIGATION EVIDENCED HEREBY, INCLUDING THOSE OF BORROWER, UNDER OR ARISING FROM ANY OTHER LOAN DOCUMENTS, THE TRANSACTIONS) RELATED HERETO, OR THE DEBTOR-CREDITOR RELATIONSHIP CREATED HEREBY.”
The only item between the signature line and Section 22 was a box labeled “NOTICE TO GUARANTOR,” which phrase was also capitalized in bold type.
The Bank states that Busby has both an undergraduate degree in business and a law degree, that he has worked as a stockbroker, that he is the majority owner of a company that teaches clients about the stock market, that he has guaranteed approximately 20 other loans for various entities, and that he has borrowed money himself on various occasions. The Bank states that Busby is able to read and to understand promissory notes and that he understands the difference between a limited guaranty and an unlimited guaranty. The Bank also states, citing Busby’s deposition, that Busby admitted that he did not read the guaranty agreements before he signed them but conceded that he had the opportunity to read them before signing them. Busby also stated in his deposition that he did not read the guaranty agreements because the amount guaranteed was not what he had agreed to and he expected to receive paperwork “fixing it” from Phillip Webb, the loan officer with whom he dealt at the Bank.
Sims defaulted on the loan, and the Bank sought payment from Busby, as guarantor. Busby then sued the Bank, alleging that the Bank had defrauded him by representing that his guaranty was for $63,000 when in fact it was for $70,000 (the full amount of Sims’s loan) and by promising him that it would modify the guaranty agreement so that it would cover only 89% of Sims’s indebtedness. Busby also sought a judgment declaring that his guaranty had been terminated by an agreement of the parties, and he demanded a jury trial. The Bank filed a counterclaim alleging that Busby had breached the guaranty agreements and sought a judgment declaring the extent of Busby’s obligations under *166 the agreements. The Bank moved to strike Busby’s jury demand on the basis of the jury-trial waivers in the guaranty agreements executed by Busby. Busby opposed the Bank’s motion. The trial court denied the Bank’s motion to strike Busby’s jury demand. Busby then filed an amended complaint, alleging that the Bank had misrepresented the terms and amount of the guaranties, that it had “willfully, wantonly or negligently breached a duty to fully inform Busby of the amount and duration of the loan he guaranteed [and] suppressed its intent to hold Busby liable for the full amount ... [and had] failed to mitigate its damages.” The Bank then petitioned this Court for a writ of mandamus.
II. Standard of Review
“The standard governing our review of an issue presented in a petition for the writ of mandamus is well established:
“‘[Mjandamus is a drastic and extraordinary writ to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’
“Ex parte Edgar, 543 So.2d 682, 684 (Ala.1989).
“Mandamus is an appropriate remedy where the availability of a jury trial is at issue, as it is in this case. Ex parte Merchants Nat’l Bank of Mobile, 257 Ala. 663, 665, 60 So.2d 684, 686 (1952).”
Ex parte Cupps, 782 So.2d 772, 774-75 (Ala.2000).
III. Analysis
The right to a jury trial is a significant right in our jurisprudence. “Public policy, the Alabama Rules of Civil
Procedure, and the Alabama Constitution all express a preference for trial by jury.” Ex parte AIG Baker Orange Beach Wharf, L.L.C., 49 So.3d 1198, 1200-01 (Ala.2010) (citing Ex parte Cupps, 782 So.2d at 775). Nevertheless, the right to a jury trial is not absolute in that “no constitutional or statutory provision prohibits a person from waiving his or her right to trial by jury.” Mall, Inc. v. Robbins, 412 So.2d 1197, 1199 (Ala.1982).
The Bank first argues that the jury-trial waivers in the guaranty agreements signed by Busby are enforceable. In Gaylord Department Stores of Alabama v. Stephens, 404 So.2d 586, 588 (Ala.1981), this Court articulated three factors to consider in evaluating whether to enforce a contractual waiver of the right to trial by jury: (1) whether the waiver is buried deep in a long contract; (2) whether the bargaining power of the parties is equal; and (3) whether the waiver was intelligently and knowingly made. The Bank argues that all three of these factors support enforcing Busby’s waiver of the right to a jury trial.
As to the first factor, the Bank argues that none of the jury-trial waivers are hidden deep within a long contract. We agree. The guaranty agreements are each only two pages long, and, although the waiver provision in Section 7 on the first page does not stand out, i.e., it is not emphasized by bold type or capitalization, there is no question that the waiver in Section 22 on the second page is clear and noticeable. It is a separate paragraph; the text is bold and capitalized; and it is located only one paragraph above the signature line. Busby does not disagree as to the first factor.
As to the second factor, the Bank contends that courts addressing jury-trial waivers have focused on the business expe *167 rience or acumen of the party signing the waiver. See, e.g., Mall, Inc., 412 So.2d at 1199. In this case, the Bank argues, Busby has both a business degree and a law degree and is an experienced businessman, all elements tending to show equal bargaining power between the parties. Busby, however, argues in his brief that the bargaining power between him and the Bank was not equal. Busby argues:
“[The Bank] uses form documents which are not susceptible to negotiation. Despite Busby being a businessman and having a law degree, or perhaps because of his being a businessman, he understood that nothing in the boilerplate of the guaranty was negotiable.
“He understood any attempt to modify the standard terms would be futile. His choice was to sign the guaranty to allow the Sims loan to close or to walk away. He had no bargaining power when it came to the language in the guaranty. The form was prepared by [the Bank] and was its standard form of guaranty....
“Equally clear is that Busby did not knowingly and intentionally sign away his right to a jury trial by signing the waiver. Even though he did knowingly and intentionally sign a form of guaranty, he also understood that he had to take the form as it was. He did not have any opportunity to negotiate changes but was presented with a completed guaranty at one [branch of the Bank] that had been prepared at another.”
Busby’s brief, at 15. If we accepted Busby’s argument, however, every form contract drafted and presented by a business institution and signed by an individual, no matter how educated the individual was, would be subject to being disavowed by the signatory on the basis of “unequal bargaining power.” Busby and the Bank contracted with each other for Busby to guarantee the Sims loan, and each party clearly had equal bargaining power in entering into that contract. We will not rewrite the contract for either party.
As to the third factor, the Bank points out that Busby has extensive experience in borrowing money and signing guaranty agreements and that he can understand legal documents, including loan documents and guaranty agreements. The jury-trial waiver language is clear and uncomplicated. Furthermore, Busby, with his business and law degrees, has the knowledge and experience to satisfy this Court that the waiver of the rights to a jury trial was knowingly and intelligently made.
After reviewing the three Gaylord factors, we conclude that the jury-trial waivers in the guaranty agreements signed by Busby are enforceable. We now turn to the Bank’s second argument — that, despite Busby’s assertion that the jury-trial waivers do not apply to his tort claims sounding in fraud, the jury-trial waivers in the guaranty agreements are applicable to all the claims asserted in Busby’s original and amended complaints.
In Ex parte AIG Baker Orange Beach Wharf, L.L.C., supra, this Court enforced broad jury-trial waiver language in a contract and ordered the trial court to grant the petitioner’s motion to strike the jury demand. This Court recognized a distinction between contractual jury waivers that are limited to claims “arising from” the agreement, which are to be narrowly constructed and which exclude claims that do not require a reference to or construction of the underlying contract for resolution, and broader waiver provisions that cover claims “arising out of or relating to” a contract. The AIG Baker Court relied upon analogous cases dealing with arbitration clauses, such as Selma Medical Center *168 v. Manayan, 733 So.2d 382 (Ala.1999) (holding that arbitration clause covering any dispute “concerning any aspect of’ agreement between doctor and hospital required arbitration of fraudulent-inducement claim); Beaver Construction Co. v. Lakehouse, L.L.C., 742 So.2d 159, 165 (Ala.1999) (noting that “ ‘relating-to’ language has been held to constitute a relatively broad arbitration provision”); General Motors Corp. v. Stokes, 850 So.2d 1239 (Ala.2002) (broadly interpreting provision in dealer-relocation agreement calling for arbitration of claims “arising under or relating to” agreement and negotiation thereof to include claims that manufacturer fraudulently induced dealer to enter into agreement); Ex parte Gates, 675 So.2d 371 (Ala.1996) (holding that clause in mobile-home sales contract providing for arbitration of claims “arising from or relating to” the contract required arbitration of buyers’ claims that defendants had misrepresented or concealed facts to induce them to enter into agreement because claims were asserted “in connection with” contract); and Ex parte Lorance, 669 So.2d 890 (Ala.1995) (holding that clause in doctor’s professional-services contract requiring arbitration of any controversy or claim “arising out of or relating to” contract covered doctor’s claim that he was fraudulently induced to enter into agreement).
The Bank argues that the jury-trial waivers in the guaranty agreements executed by Busby fall within the broader category, covering “any action in any way connected with” the guaranty agreements. Busby argues that none of his claims are “connected with” the guaranty agreements “as that phrase is used in the jury waiver.” Relying on Parker v. State, 333 So.2d 806, 809 (Ala.1976), Busby argues that “[t]he language ‘connected with’ applies only prospectively after an event has occurred.” Busby’s brief, at 9. He contends that the Bank’s alleged misrepresentations preceded his signing the guaranty agreements, and he argues that, “[b]y analogy, ‘connected with’ would apply only to conduct occurring after a contract has been entered into because there is no contract with which the conduct can be connected until the contract actually exists.” Busby’s brief, at 9-10.
Busby’s reliance on Parker is misplaced. In Parker, this Court considered the question “whether an office holder may be impeached for [a criminal] offense involving moral turpitude which occurred prior to his assumption of office.” 333 So.2d at 806. The Court interpreted a constitutional provision providing for the removal from office of certain State officers
“ ‘for willful neglect of duty, corruption in office, incompetency, or intemperance in the use of intoxicating liquors or narcotics to such an extent, in view of the dignity of the office and importance of its duties, as unfits the officer for the discharge of such duties, or for any offense involving moral turpitude while in office, or committed under color thereof, or connected therewith.’ ”
333 So.2d at 807 (quoting § 173, Art. VII, Ala. Constitution 1901). The Court concluded that it could not see “how an individual’s acts could possibly be connected with an office which he did not hold either de jure or de facto at the time the alleged acts were committed.” 333 So.2d at 809. The Parker Court’s holding has nothing to do with the interpretation of contractual language of any kind, including whether the signatory of the contract has waived the right to a jury trial.
Busby also argues in his brief that none of his claims are “connected or related to an interpretation and performance of the guaranty but, instead, to [the Bank’s] insistence on compelling Busby to pay amounts the [Bank] itself has agreed Bus *169 by does not owe.” Busby’s brief, at 17. We disagree. In his initial complaint, Busby alleged that the Bank fraudulently represented to him that it would modify the amount he had guaranteed and that the Bank breached its guaranty agreements with him because it “caus[ed] the guaranty to cover a different, larger amount of debt than agreed upon by [Busby].” He also sought a judgment declaring that he was “not indebted to [the Bank] because the original guaranty was terminated by agreement.” In his amended complaint, Busby further alleged that the Bank “engaged in deceptive behavior” when it presented him with incomplete guaranty agreements for his signature and then filled in the blanks in those agreements without his knowledge or permission; that the Bank engaged in promissory fraud when it induced him to sign guaranty agreements that were incorrect as represented, which errors the Bank did not intend to correct when it made them; that the Bank breached its duty “to make full and truthful disclosures in connection with all its loans”; that the Bank fraudulently suppressed its intent to hold him liable for more than he agreed to guarantee; and that the Bank failed to mitigate its damages. The jury-trial waiver language in the guaranty agreements says not only that both the Bank and Busby waive a jury trial in “any action by bank or by guarantor in any way connected with this guaranty,” but also that the Bank and Busby waive a jury trial as to “the obligation evidenced hereby, including those of borrower, under or arising from any other loan documents, the transaction(s) related hereto, or the debtor-creditor relationship created hereby.” The foregoing language is substantially similar to the jury-trial waiver language in AIG Baker, in which this Court held that the defendant’s “allegations of fraudulent inducement on [the plaintiffs] part in entering into the lease agreement and the guaranty document clearly pertain to or relate to the lease agreement (its negotiation), the ‘dealings of the parties’ with respect to the lease agreement and the guaranty document, and a ‘dispute or controversy’ between the parties.” 49 So.3d at 1202. In this case, the jury-trial waiver language clearly applies to all of Busby’s allegations that are “in any way connected with” the guaranty agreements, “the transaction(s) related hereto,” or “the debtor-creditor relationship” created by the guaranty agreements. We conclude that the scope of the jury-trial waiver language in the guaranty agreements is broad enough to encompass Busby’s claims.
We note that Busby contends that the Bank submitted deposition testimony to this Court that it did not present to the trial court when that court denied the Bank’s motion to strike Busby’s jury demand. Therefore, Busby argues, the Bank does not have a clear legal right to a writ of mandamus because, he argues, the Bank can file a motion to reconsider with the trial court that includes the material the trial court did not previously consider. The Bank replies that it has submitted nothing to this Court that it did not submit to the trial court. It attached to its reply brief an e-filed stamped copy of its motion to strike the jury demand and Exhibit A attached to that motion, which consisted of excerpts and exhibits from Busby’s deposition. The Bank says that the same deposition excerpts are included in Appendix C to its petition for a writ of mandamus filed with this Court. This Court has reviewed the exhibits and appendices and has determined that the Bank has not submitted any documentation to this Court that was not before the trial court. Therefore, we conclude that the Bank has demonstrated that it has a clear legal right to have Busby’s jury demand stricken.
*170 IV. Conclusion
We grant the petition, and we direct the trial court to vacate its order denying the Bank’s motion to strike Busby’s jury demand and to enter an order granting the Bank’s motion.
PETITION GRANTED; WRIT ISSUED.
MALONE, C.J., and WOODALL, BOLIN, and MURDOCK, JJ., concur.