MOORE, Chief. Justice
(dissenting).
I Respectfully, but' strongly, dissent in these appeals involving predispute arbitration agreements. It is undisputed that the policyholders never signed the provision American Bankers Insurance Company of Florida (“American Bankers”) seeks to enforce. Nevertheless, the main opinion holds that the policyholders ratified the arbitration provision because it-was referenced on the declarations page of the policies and because the policyholders, paid premiums to renew the policies. I cannot agree with that holding for two reasons. First, an application of the Federal Arbitration Act (“the FAA”), 9 U.S.C. § 1 et seq., which is the basis for enforcing the “purported” arbitration provision in this case, is unconstitutional under the Seventh Amendment to the United States Constitution. Second, because the right to. a jury in this case is a right secured by the Seventh Amendment to the United States Constitution, any wpiver of that right must be knowing, willing, and voluntary, and the policyholders’ purported waiver in this case did not meet those requirements. This Court now takes the crooked path of *396 precedent in this case[6] and arrives at a truly erroneous conclusion.

I. Seventh Amendment

The Seventh Amendment to the United States Constitution provides:
“In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.”
Any law, statute, or rule that takes away the right of a trial by jury would violate the Seventh Amendment. It bears repeating that “a law repugnant to the constitution is void.” Marbury v. Madison, 5 U.S. (1 Crunch) 137, 180, 2 L.Ed. 60 (1803). See also U.S. Const. art. VI, cl. 2 (“This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land.... ” (emphasis added)). The FAA is no exception. See Ex parte Hagan, 721 So.2d 167, 174 n. 3 (Ala.1998) (“Certainly, the FAA and arbitration clauses cannot be given precedence over constitutional provisions, such as the Seventh and Fourteenth Amendments to the Constitution of the United States.”). But in spite of the Constitution’s protection of the right to a jury trial in civil cases, courts have interpreted the FAA to take away that most valuable right, even before a dispute arises or any injury or cause of action exists.
Such an interpretation of the FAA is erroneous because Congress, when it enacted the FAA in 1925, intended it to be a rule of procedure in federal courts (not applicable to state courts) involving only a specific class of contracts in interstate commerce.[7] I am not the only Justice, either on this Court or on the United States Supreme Court, to hold this view. In Prima Paint Corp. v. Flood & Conklin Manufacturing Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), Justice Black, joined by Justice Douglas and Justice Stewart, argued in his dissent:
“[I]t is clear that Congress in passing the [Federal Arbitration] Act relied primarily on its power to create general federal rules to govern federal courts. Over and over again the drafters of the Act assured Congress: ‘The statute establishes a procedure in the Federal courts.... It rests upon the constitutional provision by which Congress is authorized to establish and control inferior Federal courts. So far as congressional acts relate to the procedure in the Federal courts, they are clearly within the congressional power.’ And again: ‘The primary purpose of the statute is to make enforcible in the Federal courts such agreements for arbitration, and for this purpose Congress rests solely upon its power to prescribe the jurisdiction and duties of the Federal courts.’ One cannot read the legislative history without concluding that this power, and not Congress’ power to legislate in the area of commerce, was the ‘principal basis’ of *397 the Act. Also opposed to the view that Congress intended to create substantive law to govern commerce and maritime transactions are the frequent statements in the legislative history that the Act was not intended to be ‘the source of ... substantive law.’ As Congressman Graham explained the Act to the House:
“ ‘It does not involve any new principle of law except to provide a simple method ... in order to give enforce-ment_ It creates no new legislation, grants no new rights, except a remedy to enforce an agreement in commercial contracts and in admiralty contracts.’ ...
“Finally, there are clear indications in the legislative history that the Act was not intended to make arbitration agreements enforceable in state courts or to provide an independent federal-question basis for jurisdiction in federal courts apart from diversity jurisdiction. The absence of both of these effects — which normally follow from legislation of federal substantive law — seems to militate against the view that Congress was creating a body of federal substantive law.”
388 U.S. at 418-20 (Black, J., dissenting) (footnotes omitted).
Justice O’Connor, joined by then Justice Rehnquist, made the same argument in a dissent issued 17 years after Prima Paint was decided:
“One rarely finds a legislative history as unambiguous as the FAA’s. That history establishes conclusively that the 1925 Congress viewed the FAA as a procedural statute, applicable only in federal courts, derived, Congress believed, largely from the federal power to control the jurisdiction of the federal courts.
“In 1925 Congress emphatically believed arbitration to be a matter of ‘procedure,’ At hearings on the Act congressional subcommittees were told: ‘The theory on which you do this is that you have the right to tell the Federal courts how to proceed.’ ...
[[Image here]]
“If characterizing the FAA as procedural was not enough, the draftsmen of the Act, the House Report, and the early commentators all flatly stated that the Act was intended to affect only federal court proceedings. Mr. Cohen, the American Bar Association member who drafted the bill, assured two congressional subcommittees in joint hearings:
“ ‘Nor can it be said that the Congress of the United States, directing its own courts ..., would infringe upon the provinces or prerogatives, of the States_ [T]he question of the enforcement relates to the law of remedies and not to substantive law. The rule must be changed for the jurisdiction in which the agreement is sought to be enforced_There is not disposition therefore by means of the Federal bludgeon to force an individual State into an unwilling submission to arbitration enforcement.’ ”
Southland Corp. v. Keating, 465 U.S. 1, 25-27, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) (O’Connor, J., dissenting) (footnotes omitted).
Justice Thomas, in a dissent joined by Justice Scalia, argued the same 11 years after the Supreme Court issued its opinion in Southland:
“Despite the FAA’s general focus on the federal courts, of course, § 2 itself contains no such explicit limitation. But the text of the statute nonetheless makes clear that § 2 was not meant as a statement of substantive law binding on the States. After all, if § 2 really was understood to ‘ereat[ej federal substantive law requiring the parties to honor *398 arbitration agreements,’ then the breach of an arbitration agreement covered by § 2 would give rise to a federal question within the subject-matter jurisdiction of the federal district courts. Yet the ensuing provisions of the .Act, without expressly taking away this jurisdiction, clearly rest on the assumption that federal courts have jurisdiction to enforce arbitration agreements only when they would have had jurisdiction over the underlying dispute. In other words, the FAA treats arbitration simply as one means of resolving disputes that lie within the jurisdiction of the federal courts.... [T]he reason that § 2 does not give rise to federal-question jurisdiction is that it was enacted as a purely procedural provision_”
Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 291, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995) (Thomas, J., dissenting) (citations omitted).
Finallyi Justice Scalia, agreeing that Southland'was wrongly decided, has told practitioners that he would overrule it if he were asked: “I shall not in the future dissent from judgments that- rest on Southland. I will, however, stand ready to join four other Justices in overruling it, since Southland will not become more correct-over time....” Allied-Bruce, 513 U.S. at 285 (Scalia, J., dissenting).
As to Justices, .on this Court, Justice Almon, joined by Justice Shores, forcefully wrote in 1998:
“I cannot see how the United States Supreme Court, which exists pursuant to the United States Constitution, can apply an Act of Congress so as to undermine the right of trial by jury in the states that guarantee that right in their •state constitutions. The United States Constitution guarantees the right of trial by jury -in the Seventh Amendment. That Amendment was adopted within the Bill of Rights as a limitation on the Federal Government. Furthermore, the Tenth Amendment provides: ‘The powers not delegated- to the United States by the Constitution,-nor prohibited by it to the states, are reserved to the states respectively, or to the people.’ ...
'“How can the Supreme Court, ignoring the Seventh and Tenth Amendments and state constitutional guarantees of ■the right of trial by jury, construe an Act of Congress beyond its original intent in such a way as to prevent citizens of the United States and the states‘from exercising their constitutional right to litigate in court? Neither the Supreme Court nor the Congress has that constitutional authority.”
Ex parte McNaughton, 728 So.2d 592, 601-02 (Ala.1998) (Almon, J., dissenting).
Justice ’Cook, addressing the issue whether the Seventh Amendment would bar'the application of the FAA in state courts, wrote:
“The fact that the United States Supreme Court has never held the Seventh Amendment to be binding on the states through the Fourteenth Amendment, as it has certain other of the Bill' of Rights guarantees, is irrelevant in this context. This is because the FÁA is not a state law. Thus, the constitutional deprivation, where one can be shown, derives from an act of Congress, not a state legislature. The Seventh- Amendment, like the .other Bill of Rights provisions, was ratified as a limitation on the power of Congress.’ Clearly, Congress had no power to deprive a citizen of Alabama of his right to a trial by jury before the Fourteenth Amendment was ratified — a fortiori, it has none now. Therefore, whether the Seventh -Amendment is binding on the states is entirely irrelevant in any consideration of the FAA.”
*399 Allstar Homes, Inc. v. Waters, 711 So.2d 924, 934 (Ala.1997) (Cook, J., concurring specially).
This Court as a whole has recoghized that “any arbitration agreement is a waiver of a party’s right under Amendment VII of the United States Constitution to a trial by jury.” Allstar Homes, 711 So.2d at 929.[8] I have no doubt that my fellow Justices would agree that any law forcing a party to arbitration if that party had not previously agreed to arbitrate would be unconstitutional. But in this case, as in many other arbitration cases, American Bankers argues that the policyholders agreed, as a matter of contract, to go to arbitration if a dispute arose. Thus, the question is whether a party may validly bargain away his or her right to a trial by jury before the right accrues. As I explained in my specially concurring opinion in Ex parte First Exchange Bank, 150 So.3d 1010, 1025-27 (Ala.2013) (Moore, C.J., concurring specially):
“I would hold that the right to a jury trial in civil cases may not be waived by a party before a lawsuit has been filed and the right accrues. ■ Because, *[o]rdi-narily, the right to a jury trial is determined by the cause of action stated,’ Ex parte Western Ry. of Ala., 283 Ala. 6, 12, 214 So.2d 284, 289 (1968), logically that right cannot be exercised before a lawsuit is filed, A maxim of the common law states that ‘no right can be barred before it accrues.’ Gould v. Womack, 2 Ala. 83, 88 (1841). See also Blackmon v. Blackmon, 16 Ala. 633, 636 (1849) (noting ‘two maxims of the common law: 1st — that no right can be barred before it accrues..-..’); Adams v. Adams, 39 Ala. 274, 281 (1864); Webb v. Webb’s Heirs, 29 Ala. 588, 601 (1857). One cannot have full knowledge about what a right entails — about what, exactly, he or she is waiving — until one fully understands what is at stake by giving up the right. Allstar Homes, Inc. v. Waters, 711 So.2d 924, 929 (Ala.1997) (holding that a waiver of the right to a trial by jury must be made knowingly, willingly, and voluntarily).
". . .
“ ‘A man may not barter away his life or his freedom, or his substantial rights — In a civil case he may submit his particular suit by his own consent to an arbitration, or to the decision of a single judge.... In these aspects a citizen may no doubt waive the rights to which he may be entitled. He cannot, however, bind himself in advance by an agreement, which may be specifically enforced, thus to forfeit his rights'at all times and on all occasions whenever the case niay bé presented.’
“Insurance Co. v. Morse, 87 U.S. (20 Wall.) 445, 451, 22 L.Ed. 365 (1874). I articulated this principle in my special writing in Ex parte Allen, 798 So.2d 668, 676-77 (Ala.2001) (Moore, C.J., concurring specially), which involved a predis-pute arbitration agreement analogous to the predispute waiver of a jury .trial:
“‘Predispute arbitration agreements are problematic [because they] ... are signed well before any dispute arises between the parties. These predispute agreements are often vague and give little notice to the signing parties of the kinds of conflicts .that will subject them, to arbitration proceedings .and the specific *400 rights they are surrendering. Because predispute agreements are entered into before the grounds on which the waiver of rights is based can be known, there is no real “meeting of the minds,” as contract law requires between two parties who commit to a binding agreement.’
“Waiver of a jury trial, to be valid, must occur after a case has been initiated. ‘Agreements entered into after a controversy arises avoid this problem [regarding full knowledge of the right being waived] because when they enter such agreements, the parties are aware of the kind of complaint they are allowing to proceed to arbitration in the place of a jury trial.’ Allen, 798 So.2d at 677 (Moore, C.J., concurring specially) —
“Although outside the arbitration context no federal law attempts to preempt Alabama’s constitutional right to a jury trial, that inviolate right does not accrue until a lawsuit is filed. No individual may waive a right to a jury trial in Alabama indefinitely into the future, for that right does not accrue if it depends upon future events that may or may not occur. If a person may not exercise a jury-trial right until he or she has been sued, it follows a fortiori that a person may not waive that right before he or she has been sued.
“A jury-trial right is analogous to the right to counsel, which cannot be waived until the initiation of legal proceedings. Art. I, § 6, § 10, Ala. Const.1901; Davis v. State, 292 Ala. 210, 291 So.2d 346, 350 (1974); Withers v. State, 36 Ala. 252 (1860). Other rights granted by the Declaration of Rights cannot be waived before they accrue. For instance, a person cannot contractually waive his or her right to sue until that right has accrued. Art. I, § 10, § 11, § 13, Ala. Const.1901. A person cannot contractually waive his or her right to bail until after that right has accrued. Art, I, § 16, Ala. Const. 1901. Likewise, because § 11 declares the right to a jury trial to be inviolate, an individual may not waive that right before it accrues.”
(Footnotes omitted.)
Based' on the authorities cited in my specially concurring opinion in Ex parte First Exchange Bank, it appears to me that, at common law, one could not bargain away his or her right to a jury trial until a cause of action had accrued. This common-law history was not lost but was carried forward in the Seventh Amendment.
“ ‘The interpretation of the Constitution of the United States is necessarily influenced by the fact that its provisions are framed in the language of the English common law, and are to be read in the light of its history.’ ...
“ ‘In this, as in other respects, it must be interpreted in the light of the common law, the principles and history of which were familiarly known to the framers of the Constitution.’ ”
Schick v. United States, 195 U.S. 65, 69, 24 S.Ct. 826, 49 L.Ed. 99 (1904) (quoting Smith v. Alabama, 124 U.S. 465, 478, 8 S.Ct. 564, 31 L.Ed. 508 (1888), and United States v. Wong Kim Ark, 169 U.S. 649, 654, 18 S.Ct. 456, 42 L.Ed. 890 (1898)). Parties certainly could have agreed to submit a dispute to arbitration once that dispute arose. See 3 William Blackstone, Commentaries *16-17. However, for the reasons stated above, I believe the Framers of the Seventh Amendment would have viewed any law that attempted to enforce predispute arbitration agreements as void under the Seventh Amendment.
Time and time again, the United States Supreme Court has interpreted the FAA to be a valid exercise of Congress’ power under the Commerce Clause and has therefore required state courts to apply *401 the FAA. See, e.g., Allied-Brace Terminix Cos. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); and Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Justice Houston wrote in Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 38 (Ala.1998) (Houston, J., concurring specially):
“Although I disagree with the majority of the United States Supreme Court in its Allied-Bruce interpretation of the Federal Arbitration Act as it applies to state courts, a majority opinion of that Court is part of the law Í have taken an oath to uphold. See the second paragraph of Article VI of the Constitution of the United States.”[9]
I do not agree that the Supreme Court’s interpretation of the FAA is a law I am required to apply, because that interpretation does not conform to the United States Constitution I am sworn to uphold and support. What if a state court- is presented with a constitutional question the United States Supreme Court has not yet considered? As far as my research shows, the United States Supreme Court has not yet considered whether its interpretation of the FAA violates the Seventh Amendment. As stated above, a federal statute is void if it violates the Federal Constitution. Marbury, 5 U.S. (1 Cranch) at 180. As Chief Justice Marshall wrote in Marburg:
“Why does a judge swear to discharge his'duties agreeably to the constitution, of the United States, if that constitution forms no rule for his government? if it is closed upon him, and cannot be inspected by him?”
Marbury, 5 U.S. (1 Cranch) at 180.
If we declined to apply the Seventh Amendment because doing so would undermine the United States Supreme Court’s interpretation of the FAA, which is not even a law but merely a judicial opinion, then we would be violating the Supremacy Clause,[10] our oaths of office,[11] and every sound principle of constitutional law. The Supreme Court’s interpretation of a federal statute does not preclude all lower courts from considering constitutional questions the Supreme Court has never considered. Therefore, we must analyze the arbitration provision in this case by the Seventh Amendment, the Supreme Court’s precedent interpreting the' FAA notwithstanding. •

*402
II, Knomng, Willing, and Voluntary Waiver

If this Court still believes that predis-pute arbitration agreements are enforceable, the Seventh Amendment notwithstanding, then it should remember that, “regardless of the federal courts’ policy-favoring arbitration, we find, nothing in the FAA that would permit such a [jury] waiver unless it is made knowingly, willingly, and ■ voluntarily.” Allstar Homes, 711 So.2d at 929. This rule is a slight variation of a general rule in contract law that applies when parties agree in advance to waive their rights tp a trial by jury, •
“In Gaylord Department Stores of Alabama v. Stephens, 404 So.2d 586, 588 (Ala.1981), this Court articulated three factors to consider in evaluating whether to enforce a contractual waiver of the right to trial by jury: (1) whether the waiver is buried deep in a long contract; (2) whether the bargaining power, of the parties is equal; and (3) whether the waiver was intelligently and knowingly made.”
Ex parte BancorpSouth Bank, 109 So.3d 163, 166 (Ala.2012). Gaylord Department Stores of Alabama v. Stephens, 404 So.2d 586, 588 (Ala.1981), required such a test because “Article I, § 11, Constitution 1901, provides " that the right to trial by jury shall remain inviolate,”, describing' the right to. trial, by. jury as a “precious right.”[12]
In this case, it is undisputed that the policyholders never signed an arbitration agreement. The main opinion holds that the “declarations page” of the policies notified the policyholders of the existence of the forms in question, noting that the written insuring agreement provided that “[t]his policy is not complete without the declarations page.” However, there is no document entitled “declarations page” in the record. Although I do not dispute that the document- relied upon by the main opinion is typically referred to as a “declarations page,” there is nothing on the page itself that would alert the policyholders that this page is the critical document that has been referenced repeatedly throughout the policies.
Moreover, nothing in plain English oh the declarations page indicates that the policyholders were waiving their rights to trial by jury. As the main opinion notes, the declarations page made a brief reference to forms AJ9821EPC-0608 and N1961-0798.[13] These combinations of letters and numbers appear among eight other similar references - in a small space. There were only three words in English adjacent to these 10 mysterious combinations of letters and' numbers: “FORMS AND ENDORSEMENTS." (Capitalization in original.) The main opinion reasons that this should have prompted the policyholders to investigate further, but nothing on the declarations page necessarily indicates that the referenced forms constitute part of the policy. There is no explanation of what these “forms and endorsements” are, or even whether they are part of the policy. Regardless of whatever American Bankers was thinking, I cannot agree that those references on the declarations page were sufficient to constitute a knowing, willing, or voluntary waiver of *403 the policyholders’ inviolate right to a jury trial.
I fear that the precedential effect of this case will be disastrous. The main opinion stands for the proposition that an insurance company may deprive policyholders of their constitutional rights without their express consent so long as a vague, mysterious, code-like reference to a form appears somewhere in the policy. Under this rationale, why would insurance companies even have to send arbitration forms to their policyholders? If the insurance company’s failure to get the policyholders to sign the arbitration forms in this case was an accident, what is there to stop an insurance company from doing the same thing intentionally in the next case? Policyholders are entitled to know in advance what their obligations are and whether they are expected to give up their rights, instead of being subjected to a game of insurance-company “peek-a-boo.”[14].

III. Conclusion

The right to a trial by jury is a sacred and precious right. Sir William Blackstone called it the “best preservative of English liberty.” 3 William Blaekstone, Commentaries *381. The American Founders declared independence from King George' III, in part, for depriving them of “the benefits of Trial by Jury.”[15] The Declaration of Independence ¶ 20. The Framers included the'right to trial by jury in our national Bill of Rights. The Alabama Constitution says that the right to 'trial by jury “shall remain inviolate.” § 11, Ala. Const.1901. Then Justice Rehnquist called the right to trial by jury “an important bulwark against tyranny and corruption, a safeguard too precious to be left to the whim of the sovereign, or, it might be added, to that of the judiciary.” Parklane Hosiery Co. v. Shore, 439 U.S. 322, 343, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (Rehnquist, J., dissenting).
How then has this Court held today that the right to trial by jury may be destroyed through such an inconspicuous means? I respectfully'submit that this is the result of following bad precedent.[16] If the Su *404 preme Court’s precedent interpreting a federal statute conflicts with the United States Constitution itself, then our duty is not to predict the next bend in the crooked path by asking, “What would the Supreme Court do?” Instead, our duty, under oath, is to ask, “What does the Constitution say?” Here, that Constitution says the policyholders have a right to a jury trial. Furthermore, one may give up such an invaluable right, even in a case where an injury has already occurred and a cause of action exists, only when the waiver of that right is knowing, willing, and voluntary, and in this case it was not.
I respectfully dissent.

. See Lorence v. Hospital Bd. of Morgan Cnty., 294 Ala. 614, 618-19, 320 So.2d 631, 634-35 (1975) (reproducing a poem by Sam Walter Foss to illustrate the absurdity of blindly following precedent and stating: “The. quaint poetic lines of Sam Walter Foss put in perspective the philosophy of those courts which feel compelled to sacrifice their sense of reason and justice upon the altar of the Golden Calf of precedent.”).

. I have explained elsewhere that Congress enacted the FAA under its Article III powers to prescribe rules of procedure for federal courts but that the courts have misinterpreted the FAA as an exercise of Congress' Article I power over interstate commerce. Selma Med. Ctr., Inc. v. Fontenot, 824 So.2d 668, 677-91 (Ala.2001) (Moore, C.J., dissenting).

. Allstar Homes was criticized in the plurality opinion of Perry v. Hyundai Motor America, Inc., 744 So.2d 859 (Ala. 1999). However, "[t]he precedential value of the reasoning in a plurality opinion is questionable at best.” Ex parte Discount Foods, Inc., 789 So.2d 842, 845 (Ala.2001).

. However, the second paragraph in Article VI of the United States Constitution says that state judges are bound by the supreme law of the land, which consists of three things: (1) the Constitution itself, (2) laws of the United States made pursuant to the Constitution, and (3) treaties made under authority of the United States. A Supreme Court opinion is not the Constitution itself; it is not a law of the United States made pursuant to the Constitution; and it is not a treaty made under the authority of the United States — how then does Article VI bind state judges to uphold Supreme Court opinions?

. The Supremacy Clause reads: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.” U.S. Const., Art. VI, cl. 2 (emphasis added).

.
‘‘I, ., solemnly swear (or affirm, as the case may be) that I will support the Constitution of the United States, and the Constitution of the State of Alabama, so long as I continue a citizen thereof; and that I will faithfully and honestly discharge the duties of the office upon which I am about to enter, to the best of my ability. So help me God.”
§ 279, Ala. Const. 1901.

. This'rule is not unique to Alabama. For a detailed discussion of how other courts apply ■this rule, or some slight variation of it, see Jean R. Sternlight, Mandatory Binding Arbitration and the Demise of the Seventh Amendment Right to a Jury Trial, 16 Ohio St. J. on Disp. Resol. 669, 678-90 (2001).

. I realize that the number on one of the forms was different for Gwendolyn Moody, just as the main opinion does. See 192 So,3d at 389 n. 1.

. Cf. United States v. Virginia, 518 U.S. 515, 574, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (Scalia, X, dissenting) ("The States and the Federal Government are entitled to know before they act the standard to which they will be held, rather than be compelled to guess about the outcome of Supreme Court peek-a-boo.”).

. As Justice Almon observed in his dissent in McNaughton; "King George’s denial of the right of trial by jury was one Of the articles of the Declaration of Independence.” McNaughton, 728 So.2d at 602 (Almon, J., dissenting).

. The main opinion notes that the policyholders did not invite us to overrule precedent and that this Court is not inclined to do so without an invitation. This does necessarily mean that it may not overrule controlling precedent without being asked to do so. See, e.g., Travelers Indem. Co. of Connecticut v. Miller, 86 So.3d 338, 347 (Ala.2011) (overruling . a case while expressly noting that the Court had not been asked to do so). Likewise, this Court is not forbidden from addressing the Seventh Amendment issue or from considering Allstar Homes even though neither of the parties raised those claims, "[A] court may consider an issue ‘antecedent to ... and, ultimately dispositive of’ the dispute before it, even an issue the parties fail to identify and brief,” United States Nat'l Bank of Oregon v. Independent Ins. Agents of America, Inc., 508 U.S. 439, 447, 113 S.Ct, 2173, 124 L.Ed.2d 402 (1993) (quoting Arcadia v. Ohio Power Co., 498 U.S. 73, 77, 111 S.Ct. 415, 112 L.Ed.2d 374 (1990)). See also Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 960 (Ala.2004) (" ‘ “Appellate review does not consist of supine submission to erroneous legal concepts even though none of the parties declaimed the applicable law below. Our duty is to enunciate.the law on the record facts. Neither the parties nor the trial judge, by agreement or passivity, can force us to abdicate our appellate responsibility” ’ ” (quoting Forshey v. Principi, 284 F.3d *404 1335, 1359 n. 20 (Fed.Cir.2002), quoting in turn Empire Life Ins. Co. of America v. Valdak Corp., 468 F.2d 330, 334 (5th Cir.1972))). This is especially true when this Court affirms a ruling of a trial court, as I would do here. See Southern Energy Homes, Inc. v. Gregor, 777 So.2d 79, 81 (Ala.2000) (‘‘[TJhis Court can affirm the ruling of a trial court for any valid reason, even one not presented to or considered by the trial court.”).